# EXHIBIT 1

IN THE SUPERIOR COURT OF MUSCOGEE COUNTY

STATE OF GEORGIA

GEORGIA, MUSCOGEE COUNTY
SUPERIOR/STATE COURT
eFILED
12/7/2018 4:13 PM
DANIELLE F. FORTE, CLERK

RASHAD BAKER

CIVIL ACTION.
NUMBER _____ **SU-18-CV-3026**

_____

**PLAINTIFF**

**VS.**

STATE FARM MUTUAL AUTOMOBILE

INSRUANCE COMPANY

**DEFENDANT**

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Jerry A. Buchanan
P.O. Box 2848
Columbus, Georgia 31902

E. Adam Webb
Webb, Klase, & Lemond, LLC
1900 The Exchange, SE Suite 480
Atlanta, Georgia 30339

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____ 07 _____ day of _____ DECEMBER _____ 2018 , 19 ___.

(Your Name)
Clerk of Superior Court

**/s/ Audra Kuresa**

By_____

Deputy Clerk

Instructions:  Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used

SC-1 Rev.85

GEORGIA, MUSCOGEE COUNTY
SUPERIOR/STATE COURT
eFILED
12/7/2018 4:13 PM
DANIELLE F. FORTE, CLERK

**General Civil and Domestic Relations Case Filing Information Form**

☑ Superior or ☐ State Court of  Muscogee_____ County

| For Clerk Use Only | | |
|---|---|---|
| Date Filed  12/7/2018 | Case Number  SU-18-CV-3026 | |
| MM-DD-YYYY | | |

**Plaintiff(s)**

BAKER          RASHAD

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |

**Defendant(s)**

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |

**Plaintiff's Attorney**  Jerry A. Buchanan          **Bar Number**  092200          **Self-Represented** ☐

## Check One Case Type in One Box

**General Civil Cases**

- ☐ Automobile Tort
- ☐ Civil Appeal
- ☑ Contract
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☐ Other General Civil

**Domestic Relations Cases**

- ☐ Adoption
- ☐ Dissolution/Divorce/Separate Maintenance
- ☐ Family Violence Petition
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

**Post-Judgment – Check One Case Type**

- ☐ Contempt
- ☐ Non-payment of child support, medical support, or alimony
- ☐ Modification
- ☐ Other/Administrative

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____          _____
**Case Number**                          **Case Number**

☑ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is an interpreter needed in this case? If so, provide the language(s) required. _____
                                                                                          **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

_____
_____

Version 1.1.18

GEORGIA, MUSCOGEE COUNTY
SUPERIOR/STATE COURT
eFILED
12/7/2018 4:13 PM
DANIELLE F. FORTE, CLERK

## IN THE SUPERIOR COURT OF MUSCOGEE COUNTY
## STATE OF GEORGIA

|  |  |
|---|---|
| RASHAD BAKER, on behalf of himself and all others similarly situated, ) ) ) ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) ) | SU-18-CV-3026 |
| ) | FILE NO. _____ |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, ) ) ) | |
| Defendant. ) ) | **JURY TRIAL DEMANDED** |

### CLASS ACTION COMPLAINT

COMES NOW Plaintiff Rashad Baker, individually and on behalf of the class of persons preliminarily defined below, and alleges as follows:

### NATURE OF THE ACTION

1.

Plaintiff files this action on behalf of himself and as a class action lawsuit seeking to represent the hundreds of thousands of other Georgians who have been victimized by Defendant's improper and unlawful treatment of diminished value claims in conjunction with first-party automobile physical damage claims. State Farm Mutual Automobile Insurance Company ("State Farm") is the largest automotive insurer in Georgia.

2.

State Farm issues a standard form automobile insurance policy in Georgia. Under the policy terms, State Farm has two options to satisfy its contractual obligations when one of its policyholders incurs damage to his or her vehicle and submits a claim. State Farm may either:

(a) "[p]ay the cost to repair the covered vehicle minus any applicable deductible" or (b) "[p]ay the actual cash value of the covered vehicle minus any applicable deductible."

3.

It has been clear for more than 90 years that the "primary obligation" of an insurer operating in Georgia is to pay the "actual loss," which necessarily starts with "the difference between the value of the property" before an accident and after an accident.

4.

For 76 of those years, State Farm avoided its primary obligation by steadfastly adhering to the facially false premise that an auto-body shop can return a physically damaged automobile to its pre-loss value. The Georgia Supreme Court expressly rejected this premise in 2001. In State Farm v. Mabry, 274 Ga. 498 (2001), the Court recognized the commonsense and longstanding "economic reality" that an automobile will sell for less money after it has been damaged, even if an auto-body shop returns the automobile to its pre-loss appearance and operability. The difference in value between the undamaged vehicle and the vehicle after the collision and repair can be defined as the "diminished value," which State Farm is required to reimburse to the policyholder. Mabry held that "a limitation of liability provision affording the insurer an option to repair serves only to abate, not eliminate, the insurer's liability for the difference between pre-loss and post-loss value." 274 Ga. at 506.

5.

Prior to the Mabry case reaching the Supreme Court, this Court issued mandatory injunctive relief requiring State Farm to assess for diminished value as part of its loss claim adjustments. In June 2001, this Court issued an injunction requiring State Farm to develop "a

2

methodology for assessment of non-repair related diminished value." This Court gave State Farm four options to choose from in paragraph 17 of its order.

6.

In the final section of its decision, the Supreme Court upheld this Court's earlier award of mandatory injunctive relief requiring State Farm to perform its contractual duties and "develop an appropriate methodology for making such evaluations" of diminished value. The Supreme Court reasoned that this Court did not abuse its discretion to award injunctive relief because it "considered the convenience of the parties" and "chose the least oppressive means."

7.

On remand to the Muscogee County Superior Court, the parties in Mabry settled the case and State Farm began to use its "17(c) formula" to assess automobile diminished value. As Plaintiff will show, the "17(c) formula" is an inherently unfair assessment methodology that grossly underestimates the diminished value of damaged vehicles. State Farm intentionally employs the "17(c) formula" to minimize the amount of diminished value it pays to first-party claimants.

8.

Neither the holding nor dicta in the Supreme Court's Mabry decision endorses State Farm's use of the "17(c) formula" to assess automobile diminished value. Indeed, State Farm's current method of calculating diminished value is antithetical to the holdings of Mabry.

9.

The Georgia Commissioner of Insurance has refused to endorse "the 17(c) formula." Indeed, on December 2, 2008, the Commissioner issued Directive No. 08-P&C-2 and stated that the Insurance Commissioner does not endorse any particular method of assessing diminished

3

value and further that total reliance on any one method may not be consistent with Georgia law or the applicable policy language.

10.

Even if the "17(c) formula" was an appropriate methodology to assess all claims of diminished value, it is State Farm's policy and practice to surreptitiously *misapply* this formula so as to avoid paying its policyholders even the modest diminished value that an accurate application of the formula would generate.

11.

State Farm has been allowed to continue its pervasive practice of undervaluing diminished value claims for years, due in large part to the hurdles individual victims face to obtain reimbursement for their true diminished value losses. State Farm insureds are forced to hire an independent appraiser on their own dime, plead with State Farm to offer a fair valuation, search for and retain an attorney willing to litigate the case, pay court costs and attorneys' fees, and wait during a year or more of litigation. The costs associated with obtaining a fair diminished value payment often dwarf the possible recovery.

12.

While statutory bad faith damages and fees are ostensibly available to individual plaintiffs, State Farm's years of practice handling and litigating diminished value claims make the prospect for recovery exceedingly unlikely. Almost no State Farm customers have been able to navigate the process to obtain fair reimbursement for their diminished value. Thus, customer claims have not been effective in dissuading State Farm from continuing to victimize Georgia policyholder-claimants through application (and mis-application) of the inherently unfair "17(c) formula."

4

13.

State Farm's use and misuse of the "17(c) formula" to assess diminished value in order to avoid paying Plaintiff and the Class members the actual value of their covered losses constitutes a breach of its standardized insurance contract. Plaintiff seeks compensatory damages as well as injunctive relief requiring State Farm to appropriately assess and pay for covered diminished value losses.

## JURISDICTION AND VENUE

14.

Jurisdiction and venue are proper in this Court pursuant to O.C.G.A. § 33-4-1 because Defendant has agents – and regularly does business – in Muscogee County. Defendant's form insurance agreement issued in Georgia calls for the application of Georgia law to this dispute. Although this case does not have to be filed in Muscogee County, given the history of the Mabry case, including the settlement to be enforced by this Court, it is most appropriate that the case be filed here.

## THE PARTIES

15.

Plaintiff Rashad Baker is a resident of Gwinnett County, Georgia who maintains automobile insurance with State Farm on his 2018 Chevrolet Silverado LTZ four-door pickup truck. Mr. Baker timely submitted a claim to State Farm when his parked truck sustained damage from a sideswipe collision initiated by an unknown vehicle. Pursuant to the insurance policy, State Farm is liable to pay Mr. Baker for the diminished value to the vehicle but it has refused to do so.

5

16.

Defendant State Farm is organized under the laws of the State of Illinois and has its headquarters in Bloomington, Illinois.   State Farm is licensed to sell automobile insurance policies in all 50 states, including Georgia, and has numerous agents and places of business in Georgia, many of which are located in Muscogee County.   State Farm may be served via its registered agent:   Corporation Service Company, 40 Technology Pkwy South, #300, Norcross, GA 30092.

## COMMON FACTUAL ALLEGATIONS

17.

State Farm's standard automobile insurance policy issued in Georgia gives Defendant the option to settle a claim by either "pay[ing] the cost to repair the covered vehicle" or "pay[ing] the actual cash value of the covered vehicle."   Under Georgia law, "repair" also means restoration of pre-loss value after repairs.   This has long been part of the bargain for insurance in Georgia.   The Supreme Court of Georgia reaffirmed this in Mabry when it reasoned "our holding in this case that State Farm is obligated to pay for diminution in value when it occurs is based in reason, precedent, and the intent of the parties."   274 Ga. at 508.

18.

Mabry did not grant State Farm insureds the right to insist that State Farm use any particular valuation method.   Mabry certainly did not, however, grant State Farm the right to use a method that systemically undervalues actual diminished value losses.   State Farm is obligated to pay the actual difference in value immediately before the loss and the value after necessary repairs have been completed ("actual diminished value").   See Mabry, 274 Ga. at 509 ("the policies issued by State Farm obligate it to compensate its policyholders for that loss of value,

notwithstanding repairs that return the vehicle to pre-loss condition in terms of appearance and function, if the repairs do not return the vehicle to its pre-loss value"). State Farm's continued failure to do so is an express breach of contract as well as a breach of the covenant of good faith and fair dealing.

19.

State Farm offers and pays less than is reasonably owed for diminished value to all of its insureds who file a first-party claim that State Farm elects to cover through its repair option. Defendant arrives at these low-ball diminished value payments via its purported application of the "17(c) formula." The "17(c) formula" has four factors. Application of these factors is intended by State Farm to – and does – grossly undervalue the true amount of diminished value that vehicles sustain as a result of a collision or accident. Each step in the process is intended by State Farm to – and does – artificially lower the assessment and corresponding payment.

20.

The first step in the "17(c) formula" is for a State Farm claims agent to choose what dollar amount will be used to represent the vehicle's pre-loss value. State Farm informs its insureds that it relies upon the "NADA value" to determine a vehicle's pre-loss value. "NADA" is an acronym for the National Automobile Dealers Association. However, State Farm's practices make it impossible for Plaintiff or any other claimant to verify whether a given "NADA value" is actually distributed by the National Automobile Dealers Association. Indeed, the website where NADA values are made available (www.NADAGuides.com) states: "Any valuation information displayed on this Website is produced and owned by J.D. Power."

7

21.

State Farm does not disclose to claimants what factors agents consider in choosing a given NADA value but agents are trained to account for the mileage of the vehicle and its general condition before the collision.  As will be shown below, by factoring mileage into the vehicle's value in step one, State Farm intentionally makes a double deduction for mileage. State Farm's nondisclosures in this regard make it impossible for its insureds to verify that State Farm has used an unfair NADA value.  State Farm's secrecy is no accident as agents routinely low-ball the NADA value which, of course, invariably lowers the diminished value payments which State Farm eventually offers to claimants.

22.

The second step in the "17(c) formula" is for State Farm agents to discount the vehicle's assigned NADA value by 90%, an arbitrary figure that is designed to cap and minimize State Farm's ultimate diminished value payment.  Application of a 90% discount is Defendant's practice regardless of how old a vehicle is, how many miles it has on it, how significant the damage to the vehicle is, or any other factors highly relevant when assessing fair diminished value.  Defendant's capping of diminished value at 10% of pre-loss fair market value is arbitrary in both theory and practice and artificially lowers the assessed diminished value to an amount which is well below the actual loss.  Expert appraisers can point to common circumstances in which the diminished value exceeds 10% of the pre-loss value.  Thus, State Farm's required use of the 90% discount violates Mabry.

23.

After knocking off 90% of the car's pre-loss value, the third step in the formula is for a State Farm claims agent to assign a "damage modifier" value between 0 for no damage and 1 for

8

severe damage.  The vehicle's 10% pre-loss value is then multiplied by the assigned "damage modifier."  State Farm does not explain this determination to its insureds – no surprise considering that State Farm agents routinely assign low damage modifiers, regardless of the actual damage sustained by the automobile.  Defendant's secrecy in this regard leaves its insureds with no means of determining whether State Farm performed a reasonable evaluation or merely assigned an arbitrary "damage modifier."

24.

Finally, State Farm assigns a "mileage modifier" between 0 and 1.  A vehicle with 10,000 miles is assigned a value of .90 and a vehicle with 90,000 miles is assigned a value of .10.  State Farm does not pay diminished value for any vehicles with 100,000 miles or more.  Notably, vehicle appraisers confirm that diminished value after accident damage is reflected in sales of vehicles that have travelled over 100,000 miles.  To illustrate, a car with 110,000 miles on it might be worth $20,000 before a collision, but only $18,000 after being repaired.  There is no magic to the 100,000-mile threshold, this is merely an arbitrary number picked by State Farm to allow it to pay less in diminished value than it owes.

25.

Most importantly, however, any determination of a vehicle's pre-loss value – including the NADA value purportedly utilized by Defendant – *already* accounts for a vehicle's mileage and the associated reduction in value for higher mileage.  Thus, the fourth step in Defendant's "17(c) formula" serves only to artificially and arbitrarily minimize the diminished value assessment even further.

9

26.

State Farm makes this double deduction for mileage in order to underpay customers.  To illustrate, according to the NADA Guides website, a 2017 GMC Yukon Dinali with 50,000 miles on it is worth over $5,000 less than the same vehicle with 10,000 miles on it.  Thus, a State Farm diminished value claimant would suffer a $5,000 deduction in step one of the "17(c) formula," and then an additional 50% deduction in step four, artificially creating a diminished value figure that is literally one-half of the accurate amount, based only on this one flaw.

27.

A simple example shows the inability of Defendant's "17(c) formula" to accurately calculate diminished value.  For instance, a State Farm insured is driving a car or truck with 50,000 miles on it with a fair market value of $20,000 when it suffers frame damage resulting from a "T-bone" collision.  It will cost $15,000 for an auto body shop to return the car or truck as closely as possible to its pre-loss condition.  State Farm elects to exercise its repair option and pay $15,000 instead of "totaling" the vehicle and paying $20,000.

28.

Even if State Farm uses accurate values, which Plaintiff alleges it does not, the State Farm insured will not be made whole by State Farm's "17(c) formula."  The calculation would be as follows:

| Pre-loss Value: | $20,000 |
|---|---|
| Automatic 90% Reduction: | $2,000 |
| x .9 damage modifier: | $1,800 |
| x .5 mileage modifier: | $900 |
| | |
| State Farm's total offer: | $900 |

10

29.

State Farm saved itself $4,100 on this example claim by electing its repair option and utilizing its "17(c) formula" to calculate diminished value.  Meanwhile, its insured is left with a vehicle that has been repaired but most certainly will not fetch $19,100 in a sale on the open market.

30.

This example is not far-fetched.  Here is a real example of State Farm's use of the "17(c) formula" taken from discovery in another case:

NADA Value: $30,200.00

Base LOV: $3,020.00

Damage Modifier: 0.2

Mileage Modifier: 0.71

Calculated DV Amount: $428.84

An expert appraiser valued the loss at $6,252.  Once again, State Farm would only pay a small fraction of what it owed.

31.

This same process happens thousands of times each month in Georgia.  Although State Farm generally does not reveal its diminished value calculations, Defendant's representative sent this to another vehicle owner:

| NADA Value: | $11,350.00 |
| 10% of NADA Value: | $1,135.00 |
| Damage Modifier: | 10% |
| Mileage Modifier: | 60% |

11

Assessment Result:          $68.10

As always, this amount was only a small fraction of the amount that was truly owed.

32.

The plain terms of State Farm's policies further show Defendant's motivation to operate under this settlement practice.  When State Farm elects its option to "total" a vehicle and pay actual cash value, the parties have the express option to engage a neutral appraiser and the parties must reach agreement on actual cash value.  Therefore, it is far more likely that an insured will be made whole under this option.  But, State Farm does not grant this option when it elects to exercise its repair option.

33.

To make matters worse, State Farm regularly misapplies the "17(c) formula," such as by starting with an improper NADA value or by assigning an arbitrary or intentionally low damage modifier.  State Farm is able to get away with this illicit behavior because it often does not breakdown the components of the "17(c) formula" for its insured to show how its diminished value offer was calculated.

34.

The intended and actual results of State Farm's use and abuse of the "17(c) formula" are offers and payments to insureds for diminished value that are much lower than any neutral appraiser would assess; and State Farm saving itself many millions of dollars each year at the expense of its Georgia customers.  State Farm insureds are generally unaware that State Farm's practices result in their receiving less than they are owed in a claims settlement.  The few that do discover they are being cheated are often unable to afford the cost of an independent evaluation

12

of diminished value.  Even more are unwilling or unable to fight State Farm's war of attrition to recover a fair settlement.

## INDIVIDUAL FACTUAL ALLEGATIONS

### 35.

Mr. Baker purchased his 2018 Silverado new on April 5, 2018.  Mr. Baker's Silverado had less than 8,000 miles on it at the time of the subject collision.  Mr. Baker's truck was parked on the side of the road when he returned to find it damaged on June 26, 2018.  The driver's side was significantly damaged and had white paint transfer marks consistent with a sideswipe collision involving an unknown motor vehicle.

### 36.

Mr. Baker elected to file a claim for physical damage coverage under his State Farm Georgia Policy Form 9811B policy.  The damage resulted in almost $3,000 in needed repainting and replacements, including replacing a door shell and step bar.  State Farm paid the repair shop for the work, minus Mr. Baker's deductible.

### 37.

Defendant State Farm subsequently sent Mr. Baker a standard form letter dated July 24, 2018 stating:

> *Georgia law requires State Farm to assess whether your vehicle has sustained a loss in value in addition to the costs to repair your vehicle.  We have made that assessment using a formula authorized for that purpose by a Georgia court.*
>
> *That assessment is reflected in the enclosed payment of $230.40.*

### 38.

State Farm did not include an explanation of the formula it allegedly relied upon to assess the diminished value but, on information and belief, State Farm used the "17(c) formula."

13

39.

State Farm's "17(c) formula" may have been used roughly as follows to reach its $230.40 offer:

| | |
|---|---|
| Pre-loss Value: | $45,534.00 |
| Automatic 90% Reduction: | $4,553.40 |
| x .055 damage modifier: | $250.44 |
| x .92 mileage modifier: | $230.40 |

40.

Even if it is assumed the pre-loss value is accurate (even though it was less than the fair market value of Mr. Baker's undamaged truck), State Farm's use of a damage modifier of only .055 in this case is clearly unreasonable and a misuse of its own "17(c) formula." If State Farm had made a fair and reasonable assessment of the damage Plaintiff's truck suffered, it would have assigned a damage modifier of at least .40. State Farm's "17(c) formula" could then be calculated as follows:

| | |
|---|---|
| Pre-loss Value: | $45,534.00 |
| Automatic 90% Reduction: | $4,553.40 |
| x .40 damage modifier: | $1,821.36 |
| x .92 mileage modifier: | $1,675.65 |

41.

Plaintiff does not assert that the above-listed values are correct or that State Farm's use of any of the above-estimated values in its "17(c) formula" would result in an accurate calculation of diminished value. However, a fair application of the "17(c) formula" at State Farm's determined pre-loss value would have yielded a diminished value of more than *seven times* the value offered by State Farm. Thus, not only does State Farm use an unfair formula to assess diminished value, but it further rigs the compenents of the formula to ensure that the lowest possible value is calculated.

14

42.

Mr. Baker unsurprisingly viewed the offer of $230.40 to be unacceptable for a two month-old vehicle with a $53,000 sticker price that had sustained significant damage. Mr. Baker hired an independent diminished value expert after receiving State Farm's offer. Mr. Baker spent $250 to obtain an appraisal of the diminished value of his vehicle. Mr. Baker would not have incurred this cost had State Farm fulfilled its policy obligations to properly assess and pay for Mr. Baker's actual diminished value losses.

43.

The independent expert's examination and report finds that the collision resulted in $4,105 of diminished value to Mr. Baker's Silverado.

44.

On September 11, 2018, upon receipt of the expert report, Mr. Baker forwarded a copy to State Farm. Mr. Baker assumed State Farm's calculation of less than 6% of the expert's calculation must have been in error. However, State Farm responded via letter dated September 14, 2018:

> [W]e reviewed your diminished value appraisal that you submitted on September 11, 2018. Unfortunately, our position has not changed. Therefore, we are unable to increase our offer to settle your diminished value claim.

45.

Hoping to find a reasonable resolution and avoid litigation, Mr. Baker sent State Farm written correspondence on September 26, 2018. Mr. Baker requested that State Farm commission a neutral appraiser to help the parties resolve their dispute. State Farm declined to do so and stated in a letter dated September 27: "At this time we are not making any other offers to settle your claim."

46.

Mr. Baker did not cash or deposit the $230.40 check forwarded by State Farm because it is substantially less than Mr. Baker's actual diminished value losses.  State Farm's unreasonably low offer and failure to compromise resulted in Mr. Baker asserting the claims herein.

## CLASS ACTION ALLEGATIONS

47.

Plaintiff brings this action on behalf of himself and all former or current Georgia automobile insurance policyholders of State Farm who, within the applicable statute of limitations: (1) presented a first-party claim to State Farm for physical damage to an automobile; (2) State Farm elected to settle the claim by paying for repairs; and (3) State Farm used the "17(c) formula" to assess the automobile's diminished value ("the Class").

48.

Excluded from the Class are Defendant and its parents, subsidiaries, affiliates, officers, and directors; any entity in which Defendant has a controlling interest; all insureds who make a timely election to be excluded; all Class members who, with the assistance of a diminished value consultant or an attorney, negotiated with State Farm and accepted an increased diminished value payment in full satisfaction of Defendant's obligations under Georgia law; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

49.

Plaintiff expressly reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate and as the Court may otherwise allow.

50.

Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can meet all the applicable requirements of O.C.G.A. § 9-11-23 and can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

51.

Most notably, the insurance contracts at issue are standardized forms that all require State Farm to assess and pay actual diminished value losses to first-party claimants.  Plaintiff's form insurance policy is identical or substantially the same in all material respects to the policies issued to all other members of the Class.  Moreover, Defendant's use of the improper "17(c) formula" to assess and pay diminished value is a uniform policy that is equally applicable to Plaintiff and all Class members, except those who have been specifically excluded from the Class.  This practice has resulted in numerous and systematic breaches of contract by State Farm.

52.

**Numerosity.**   The members of the Class are so numerous that individual joinder of all members is impracticable.  There are tens of thousands of Class members that have been or will be during the pendency of this litigation damaged by Defendant's wrongful conduct as alleged herein.  The precise number of Class members and their addresses is presently unknown to Plaintiff but can be readily ascertained from Defendant's books and records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, and/or published notice.

53.

**Commonality and Predominance.**   Numerous common questions of law and fact exist as to the claims of Plaintiff and other Class members.  Such questions include, but are not limited to:

(a).     Whether State Farm is contractually obligated to assess the actual amount of diminished value for its Georgia customers who make a claim for a damaged vehicle;

(b).     Whether the "17(c) formula" used by State Farm artificially or arbitrarily underestimates the actual amount of diminished value sustained by the Class members' automobiles;

(c).     Whether State Farm's application of the "17(c) formula" is sufficient for it to meet its legal automobile diminished value assessment obligations to the Class members;

(d).     Whether State Farm misapplies the "17(c) formula" in assessing the actual amount of diminished value to the Class members' automobiles;

(e).     Whether State Farm is contractually obligated to pay the actual amount of diminished value to the Class members;

(f).     Whether State Farm has a contractual duty to inform Class members of the elements of its diminished value calculation;

(g).     Whether State Farm has breached its insurance contract with the Class members, either directly or via the covenant of good faith and fair dealing;

(h).     The proper method or methods by which to measure damages; and

(i).     Any specific performance or injunctive relief to which the Class is entitled.

18

54.

Defendant has engaged in a common course of conduct toward Plaintiff and the other Class members. The common issues arising from this conduct that affect Plaintiff and the other Class members predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

55.

**Typicality.** Plaintiff's claims are typical of the other Class members' claims because, among other things, all of the claims arise out of a common course of conduct and assert the same legal theories. Further, Plaintiff and members of the Class were comparably injured through the uniform misconduct described above.

56.

**Adequacy of Representation.** Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other Class members; Plaintiff has retained counsel competent and experienced in complex consumer and class action litigation; and Plaintiff intends to prosecute this action vigorously. Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

57.

**Injunctive Relief.** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief, as described below. Specifically, Defendant continues to rely solely on its "17(c) formula" when assessing the diminished value of automobiles, which results in consistently low calculations and settlement offers to its insureds. Defendant does not provide its insureds a means of determining whether Defendant has relied upon incorrect information or erred in

19

computation of its "17(c) formula."  Defendant fails to consider all relevant factors needed to accurately establish diminished value unless and until its insureds hire a diminished value consultant or attorney, if at all.  Defendant's "17(c) formula" cannot provide an accurate calculation of diminished value in any case where actual diminished value is more than 10% of pre-loss fair market value.  Class-wide injunctive relief is appropriate to put an end to these illicit practices.

58.

**Superiority.**   A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and each of the other Class members are small compared to the burden and expense that would be required to individually litigate their claims against Defendant, thus rendering it impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments; and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIM FOR RELIEF

### COUNT ONE
### Breach of Contract Including Breach of the
### Covenant of Good Faith and Fair Dealing

59.

Plaintiff repeats all paragraphs above as if set forth fully herein.

60.

State Farm's insurance contracts with Plaintiff and the Class require State Farm to assess and pay actual diminished value when State Farm elects to pay for repairs in response to an automobile physical damage coverage claim. These insurance contracts were drafted by Defendant and are properly construed against Defendant.

61.

State Farm breached this duty to Plaintiff and the Class by systemically assessing and paying less than is reasonably owed for diminished value.

62.

State Farm's breaches have caused Plaintiff and the Class members damages which can be proven at trial.

63.

Plaintiff and the Class have a legal right to recover their damages from State Farm.

64.

Furthermore, Georgia law imposes upon each party to a contract the duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually

21

obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to control the methods for claims adjustment constitute violations of good faith and fair dealing in the performance of contracts.

65.

Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified.  A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

66.

By (a) steadfastly using the inherently unfair, arbitrary, and inaccurate "17(c) formula" to assess and pay diminished value losses (as opposed to a reliable and accurate estimator of diminished value), (b) misapplying the 17(c) formula to further lower assessments and payments, and (c) failing to communicate needed information to Plaintiff and the Class members to enable them to ensure that Defendant was meeting its contractual obligations, State Farm has violated the spirit of the contract and breached the covenant of good faith and fair dealing.

67.

Plaintiff and the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

68.

Plaintiff and members of the Class sustained damages as a result of Defendant's direct breaches of the contract and Defendant's breaches of the covenant of good faith and fair dealing.

69.

Alternatively, because monetary relief is not adequate to remedy the harm caused by State Farm's breaches of its insurance contracts, Plaintiff also seeks specific performance and/or

22

an order enjoining State Farm's nonperformance to prevent irreparable harm to Plaintiff and the Class members.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that:

(a)    summons and process issue to Defendant as required by law;

(b)    this Court certify the Class, appoint Plaintiff as the Class representative, and Plaintiff's counsel as Class counsel;

(c)    judgment be entered against Defendant in such amount as will fully and adequately compensate Plaintiff and the Class members for the damages they have sustained as a result of Defendant's contractual breaches;

(d)    this Court issue an order requiring that Defendant specifically perform its obligations under the subject insurance contracts and/or enjoining any non-performance by Defendant under such contract;

(e)    this Court award pre and post-judgment interest, if applicable;

(f)    Plaintiff have a trial by jury of 12 on all claims so triable; and

(g)    this Court grant such further relief as its deems just and proper under the circumstances.

DATED this 7th day of December, 2018.

Respectfully submitted,

BY:    BUCHANAN LAW FIRM, PC

/s/ Jerry A. Buchanan
Jerry A. Buchanan
  Georgia Bar No. 092200

Post Office Box 2848
Columbus, Georgia 31902
(706) 323-2848
jab@thebuchananlawfirm.com

BY:    WEBB, KLASE, & LEMOND, LLC

/s/ E. Adam Webb
E. Adam Webb
  Georgia Bar No. 743910
Matthew C. Klase
  Georgia Bar No. 141903
D. Grant Coyle
  Georgia Bar No. 843133

1900 The Exchange, S.E.
Suite 480
Atlanta, Georgia 30339
(770) 444-9325
Adam@WebbLLC.com
Matt@WebbLLC.com
Grant@WebbLLC.com

*Attorneys for Plaintiff*

24

S7716

Civil Action No. _SU-18-CV-3026_

Date Filed _December 1 2018_

| Magistrate Court | ☐ |
| Superior Court | ☑ |
| State Court | ☐ |

Georgia, ~~Gwinnett~~ County
Muscogee

Attorney's Address

E Adam Webb
Webb Klase & Lemond, LLC
1900 The Exchange St, Suite 480
Atlanta, GA 30339

Name and Address of party to be served.

State Farm Mutual Automobile Insurance Co
c/o Corporation Service Company
2 Sun Court, Suite 400
Peachtree Corners, GA 30092

RASHAD BAKER
_____
**Plaintiff**

VS.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY
_____
**Defendant**

_____
_____
**Garnishee**

## Sheriff's Entry Of Service

**Personal ☐**

I have this day served the defendant _____ personally with a copy of the within action and summons.

**Notorious ☐**

I have this day served the defendant _____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _____ described as follows age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches; domiciled at the residence of defendant.

**Corporation ☒**

Served the defendant _State Farm_ a corporation by leaving a copy of the within action and summons with _Alisha Smith_ in charge of the office and place of doing business of said Corporation in this County.

**Tack & Mail ☐**

I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**Non Est ☐**

Diligent search made and defendant _____ not to be found in the jurisdiction of this Court.

This _8_ day of _Jan_, 20_19_.

_R. Jenose 8843_
**Deputy**

Sheriff Docket _____ Page _____

**Gwinnett County, Georgia**

WHITE:  Clerk        CANARY:  Plaintiff / Attorney        PINK:  Defendant

SC-2 Rev.3.13