# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

December 03, 2021

Jerry Alan Buchanan
Buchanan & Land, LLP
1425 WYNATON RD
PO BOX 2848
COLUMBUS, GA 31906

David Grant Coyle
Webb Klase & Lemond, LLC
1900 THE EXCHANGE SE STE 480
ATLANTA, GA 30339-2049

Matthew C. Klase
Webb Klase & Lemond, LLC
1900 THE EXCHANGE SE STE 480
ATLANTA, GA 30339-2049

Edward Adam Webb
Webb Klase & Lemond, LLC
1900 THE EXCHANGE SE STE 480
ATLANTA, GA 30339-2049

Appeal Number:  21-14197-D
Case Style:  Rashad Baker, et al v. State Farm Mutual Automobile Insurance Company
District Court Docket No:  4:19-cv-00014-CDL

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing, are available at www.ca11.uscourts.gov.**

The referenced case has been docketed in this court. Please use the appellate docket number noted above when making inquiries.

Attorneys who wish to participate in this appeal must be admitted to the bar of this Court, admitted for this particular proceeding pursuant to 11th Cir. R. 46-3, or admitted pro hac vice pursuant to 11th Cir. R. 46-4. In addition, all attorneys (except court-appointed counsel) who wish to participate in this appeal must file an Appearance of Counsel form within 14 days. The Application for Admission to the Bar and Appearance of Counsel Form are available at www.ca11.uscourts.gov.

The clerk generally may not process filings from an attorney until that attorney files an appearance form. See 11th Cir. R. 46-6(b).

11th Cir. R. 33-1(a) requires appellant to file a Civil Appeal Statement in most civil appeals. You must file a completed Civil Appeal Statement, with service on all other parties, within 14 days from the date of this letter. Civil Appeal Statement forms are available on the Internet at www.ca11.uscourts.gov, and as provided by 11th Cir. R. 33-1(a).

MEDIATION. If a Civil Appeal Statement is required to be filed, your appeal and all related matters will be considered for mediation by the Kinnard Mediation Center. The mediation services are free and the mediation process is confidential. You may confidentially request mediation by calling the Kinnard Mediation Center at 404-335-6260 (Atlanta) or 305-714-1900 (Miami). See 11th Cir. R. 33-1.

Every motion, petition, brief, answer, response and reply filed must contain a Certificate of Interested Persons and Corporate Disclosure Statement (CIP). Appellants/Petitioners must file a CIP within 14 days after the date the case or appeal is docketed in this court; Appellees/Respondents/Intervenors/Other Parties must file a CIP within 28 days after the case or appeal is docketed in this court, regardless of whether appellants/petitioners have filed a CIP. See FRAP 26.1 and 11th Cir. R. 26.1-1.

On the same day a party or amicus curiae first files its paper or e-filed CIP, that filer must also complete the court's web-based CIP at the Web-Based CIP link on the court's website. Pro se filers (except attorneys appearing in particular cases as pro se parties) are **not required or authorized** to complete the web-based CIP.

Pursuant to Eleventh Circuit Rule 42-1(b) you are hereby notified that upon expiration of (14) days from this date, this appeal will be dismissed by the clerk without further notice unless the default(s) noted below have been corrected:

Pay to the DISTRICT COURT clerk the docketing and filing fees, with notice to this office, **or** request leave to proceed in forma pauperis on appeal in the district court. See Fed.R. App.P. 24(a). If the district court denies such leave, appellant may file in this court a Motion to Proceed in forma pauperis in this court with a financial affidavit.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Scott O'Neal, D
Phone #: (404) 335-6189

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No.  21-90029-D

————————————————

RASHAD BAKER,
RACHAEL LEONARD,
ZELMA STOVALL,
on behalf of themselves and all others similarly situated,

Petitioners,

versus

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

Respondent.

————————————————

Petition for Permission to Appeal from the
United States District Court for the Middle District of Georgia

————————————————

Before: WILSON, NEWSOM, and LUCK, Circuit Judges.

BY THE COURT:


The Petition for Permission to Appeal pursuant to Fed.R.Civ.P. 23(f) is **GRANTED**.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

RASHAD BAKER, *on behalf of*          *
*himself and all others*
*similarly situated*, et al.,         *

    Plaintiffs,                  *

vs.                                   *          CASE NO. 4:19-CV-14 (CDL)

STATE FARM MUTUAL AUTOMOBILE          *
INSURANCE COMPANY,
                                      *
    Defendant.
                                      *
_____

## O R D E R

In *State Farm Mutual Automobile Insurance Co. v. Mabry*, 556
S.E.2d 114 (Ga. 2001), lawyers for State Farm policyholders
convinced the Georgia courts that State Farm, when presented
with a claim for physical damage to its insured's vehicle, was
required to evaluate whether that fully repaired vehicle had
diminished in value based on the previous damage.  Rather than
leaving this subjective diminution in value determination to
individual negotiation between State Farm and its insureds
making the claims, the trial court mandated that State Farm use
a formula for calculating diminution in value, and the Georgia
Supreme Court affirmed.  Recognizing the potential arbitrariness
of any such formula, the court-approved evaluation process
allowed the insured to reject the formula calculation and

present other evidence of diminution in value.  If agreement could not be reached, then the insured could litigate the claim.

With *Mabry*, the diminution in value litigation seemed settled.  But now another generation of creative lawyers wants in on the action.  They have focused their attack on the court-approved *Mabry* formula, claiming that it systematically underestimates diminution of value claims.  They maintain that the formula should be rewritten, and they seek to do so through this putative class action.  With class certification discovery now complete, Plaintiffs' motion for class certification is ripe for resolution.  As explained in the remainder of this Order, Plaintiffs failed to establish that the requirements for class certification under Federal Rule of Civil Procedure 23 are met.  Accordingly, the Court denies Plaintiffs' motion for class certification (ECF No. 26).

CLASS CERTIFICATION STANDARD

A class action may only be certified if the party seeking class certification satisfies, "through evidentiary proof," all the requirements specified in Federal Rule of Civil Procedure 23(a) plus at least one of the requirements set forth in Rule 23(b).  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *accord* Fed. R. Civ. P. 23.  Rule 23(a) requires every putative class to satisfy the prerequisites of numerosity, commonality, typicality, and adequacy of representation.  *Comcast*, 569 U.S.

at 33.   Here, Plaintiffs seek to certify the class pursuant to
Rule 23(b)(3), which requires that "the questions of law or fact
common to class members predominate over any questions affecting
only individual members, and that a class action is superior to
other available methods for fairly and efficiently adjudicating
the controversy." Fed. R. Civ. P. 23(b)(3).  Plaintiffs, as the
parties seeking class certification, have the burden to prove
that the class certification requirements are met.   *Brown v.
Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1233 (11th Cir.
2016).   The Court must conduct a "rigorous analysis" to
determine whether Plaintiffs have carried their burden.   *Id.* at
1234 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351
(2011)).   If doubts exist as to whether this burden has been
carried, certification must be refused.   *Id.* at 1233-34 (citing
Fed. R. Civ. P. 23 advisory committee's note to 2003 amendment).

An analysis of the Rule 23 prerequisites "will frequently
entail 'overlap with the merits of the plaintiff's underlying
claim' . . . because the 'class determination generally involves
considerations that are enmeshed in the factual and legal issues
comprising the plaintiff's cause of action." *Comcast*, 569 U.S.
33-34 (quoting *Dukes,*564 U.S. at 351).   But the Court "can
consider the merits 'only' to the extent 'they are relevant to
determining whether the Rule 23 prerequisites for class
certification are satisfied.'" *Brown*, 817 F.3d at 1234 (quoting

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013)). "[I]f a question of fact or law is relevant to that determination, then the district court has a duty to actually decide it and not accept it as true or construe it in anyone's favor." *Id.* With these standards in mind, the Court analyzes Plaintiffs' motion for class certification, starting with some factual background.

FACTUAL BACKGROUND

**I.   The *Mabry* Case**

In 2001, the Georgia Supreme Court ruled that State Farm's vehicle insurance policies covered property damage claims for post-repair diminution in value and required State Farm to "assess that element of loss along with the elements of physical damage when a policyholder makes a general claim of loss." *Mabry*, 556 S.E.2d at 123. At the time, State Farm did not have any methodology for determining the post-repair diminution in value for claims under its vehicle insurance policies, and the trial court "ordered State Farm to develop an appropriate methodology for making such evaluations." *Id.* at 124. The trial court gave State Farm several options for making diminished value assessments, including a methodology designated as the "17(c) formula," which the trial court described as a "formula distributed by the Georgia Insurance Commissioner's office and used by Safeco, Progressive, Nationwide and Crawford

4

& Co." Order ¶ 17(c) (Super. Ct. Muscogee Cnty., Ga. (June 12, 2001)), ECF No. 26-2. State Farm elected to use the 17(c) formula.

The Georgia Supreme Court affirmed the trial court's order granting declaratory and injunctive relief to the plaintiffs. The Georgia Supreme Court emphasized that nothing in State Farm's policy gave "an insured the right to insist on any particular claims handling procedure." *Mabry*, 556 S.E.2d at 123. And, the Georgia Supreme Court concluded that "[r]equiring the development of an appropriate methodology was necessary since the undisputed evidence show[ed] that State Farm had no such methodology in use," and allowing "State Farm to develop its own methodology rather than imposing one [was] the least oppressive means of accomplishing that necessary task." *Id.* at 124. The Georgia Supreme Court did not explicitly evaluate the merits of the 17(c) formula.

After the Georgia Supreme Court affirmed the trial court's orders, the parties agreed to a settlement of the class action claims. In its order and final judgment approving the settlement, the trial court concluded that the 17(c) formula "is an acceptable methodology for assessing diminished value claims" and stated that State Farm's use of the formula was approved "for the purpose of settling claims of the Settlement Class and for the purposes of assessing the future Georgia claims for

diminished value." Order ¶ 10 (Super. Ct. Muscogee Cnty., Ga. (Mar. 6, 2002)), ECF No. 31-4. The trial court ordered State Farm to continue using the formula in assessing diminished value losses. Under threat of contempt, State Farm still uses the court-ordered formula today to assess post-repair diminished value on Georgia vehicle insurance claims under its policies.

## II.  State Farm's Use of the 17(c) Formula

State Farm uses the following process to calculate diminished value under the 17(c) formula. First, State Farm calculates the "base loss of value," which is ten percent of the vehicle's pre-loss retail value as determined using the National Automobile Dealers Association website, which considers variables like year, make, model, series, body style, options, trim packages, and mileage. Second, State Farm assigns a "damage severity modifier" ranging from 0.0 ("No structural damage and replaced panels") to 1.0 ("Severe damage to the structure of the vehicle"). Pls.' Mot. to Certify Ex. 6, Ga. Diminution of Value Claims at BAKERR00001419PROD, ECF No. 26-6. Third, State Farm calculates a "mileage modifier," which is calculated by using the following formula: (Maximum Miles for Retail Sale - Actual Miles)/Maximum Miles for Retail Sale. *Id.* at BAKERR00001421PROD. Under State Farm's formula, the maximum miles for retail sale is generally 100,000 miles, but for some vehicles it can be adjusted to 150,000 miles. Finally, State

Farm calculates the diminished value by multiplying base loss of value by the damage severity modifier and the mileage modifier. If there was prior damage not attributable to the loss being adjusted, it is taken into account by performing a second 17(c) calculation.  State Farm notifies the insured of the diminished value it calculated, explaining that it "us[ed] a formula authorized for that purpose by a Georgia court."  Pls.' Mot. to Certify Ex. 17, Letter from L. Hicks to R. Baker (July 24, 2018), ECF No. 26-17.

If the insured disputes the diminished value assessment State Farm reaches using the 17(c) formula, the claim is assigned to a "Tier 2" unit that specializes in handling Georgia diminished value disputes.  During this second review, State Farm double checks to make sure the formula was applied correctly.  Nichols Dep. 29:2-12, ECF No. 31-5.  If the 17(c) formula was applied correctly, State Farm invites the insured to present evidence regarding the diminished value.  The State Farm Tier 2 unit is instructed that deviation from the 17(c) formula should be rare.

**III. Plaintiffs' Claims**

Rashad Baker and Zelma Stovall were both insureds under State Farm vehicle insurance policies.[1]  The form vehicle insurance policy under which Plaintiffs were insured provides

---

[1] Rachel Leonard, also a named Plaintiff, is Baker's fiancé and was listed as an additional driver on his State Farm insurance policy.

that State Farm "will pay for *loss caused by collision* to a *covered vehicle*."  Pls.' Mot. to Certify Ex. 1, State Farm Car Pol'y Booklet 21 § 2, ECF No. 26-1.   This obligation to pay "includes paying for any lost value." *Mabry*, 556 S.E.2d at 122. Plaintiffs' vehicles were damaged in wrecks.  State Farm covered the repairs and assessed diminished value using the 17(c) formula.   Both Baker and Stovall hired appraisers to do diminished value appraisals, and both appraisers opined that the diminished value was significantly more than the value State Farm calculated using the 17(c) formula.   State Farm's own expert also conducted an appraisal and determined that the diminution in value for each vehicle was much greater than the amount State Farm assessed using the 17(c) formula.

Plaintiffs assert breach of contract claims, contending that the 17(c) formula is flawed and that as a result Plaintiffs and similarly situated insureds were not fully paid for diminished value.  They seek to represent a class of all persons issued a Georgia vehicle insurance policy by State Farm who made physical damage claims under their policies with certain loss codes between December 7, 2017 and the date of certification.[2]

---

[2] The proposed class is "All persons issued a Georgia vehicle insurance policy by State Farm who – based on loss dates between December 7, 2017 and the date of certification – made physical damage claims under their policies that were assigned comprehensive or collision cause of loss codes 312, 332, 334, 390, 392, 394-397, 400, or 403."  Pls.' Mot. to Certify 7, ECF No. 26.  Excluded from the proposed class "are policyholders who made physical damage claims resulting in total

In their complaint, Plaintiffs request damages and injunctive
relief.   In their motion for class certification, though,
Plaintiffs recognize that calculating damages using a
traditional approach, such as case-by-case diminished value
appraisals like the ones Plaintiffs commissioned, would result
in individual issues predominating over common issues and make
class certification inappropriate.   Plaintiffs therefore amend
their prayer for relief to seek only equitable relief that would
require State Farm to reassess diminished value using a new
formula that has not yet been developed but could be formulated
after additional discovery.

## DISCUSSION

Plaintiffs meet the numerosity requirement of Rule
23(a)(1).  Rule 23(a)'s commonality, typicality, and adequacy of
representation requirements, however, are contested.  State Farm
also argues that common issues do not predominate over
individual ones, and thus Rule 23(b)(3) cannot be satisfied.

To establish commonality under Rule 23(a)(2), Plaintiffs'
"claims must depend upon a common contention" that is "of such a
nature that it is capable of classwide resolution—which means
that determination of its truth or falsity will resolve an issue
that is central to the validity of each one of the claims in one

---

losses, claims on non-owned or temporary substitute vehicles, claims
closed without a payment, claims resulting in an individual lawsuit,
and claims resulting in a diminished value payment that exceeds the
17(c) formula assessment."  *Id.* at 7 n.1.

stroke." *Dukes*, 564 U.S. at 350.   To show typicality, the claims and defenses of the representative parties must be typical of the claims or defenses of the class.  Fed. R. Civ. P. 23(a)(3).   And to demonstrate adequacy of representation, the representative parties must be able to protect the interests of the class fairly and adequately.  Fed. R. Civ. P. 23(a)(4).   All three of these requirements "tend to merge" and "serve as guideposts" for determining whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

In addition to the Rule 23(a) factors, Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).   "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012)).   "The predominance inquiry 'asks whether the common,

aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Id.* (quoting Newberg on Class Actions § 4:49, at 195-196). If a central issue is common to the class and "can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123-124 (3d ed. 2005)).

State Farm contends that Plaintiffs cannot meet the commonality and predominance requirements because the question whether State Farm breached its contractual obligation to pay diminished value is highly individualized. Diminution in value is generally calculated as "the difference between pre-loss value and post-repair value." *Mabry*, 556 S.E.2d at 121. The central issue in this action is whether State Farm breached its contractual obligation to pay diminished value by applying the 17(c) formula. The present question for the Court is whether this issue can be decided based on common evidence and whether common issues predominate over individual issues.

Plaintiffs contend that State Farm, through a uniform insurance policy, promised to assess adequate diminished value in the event of a loss. Plaintiffs further argue that State

Farm breached this contract every time it applied the 17(c) formula to assess diminished value. To support this argument, Plaintiffs rely on the expert opinion of Richard Hixenbaugh, who opines that State Farm's use of the 17(c) formula *always* results in an under-assessment of diminished value that does not reasonably approximate the actual diminished value. Thus, Plaintiffs contend that common evidence can establish that application of the 17(c) formula results in State Farm breaching its contractual obligation to assess diminished value. Plaintiffs also assert that common evidence (which does not yet exist) can demonstrate an appropriate methodology for determining diminished value and that this to-be-determined methodology can be applied across the board to calculate a fair diminished value assessment for each class member.

Because Plaintiffs rely on Hixenbaugh's opinions regarding the 17(c) formula in support of class certification, the Court must rigorously analyze his opinions. He is an experienced vehicle appraiser who conducts individualized appraisals for diminished value and is familiar with the 17(c) formula. He has identified three specific flaws in the formula that he opines result in artificially deflated diminished value assessments every single time the formula is applied: (1) the formula caps diminished value at ten percent of the vehicle's pre-loss value even though diminished value losses often exceed that amount and

vehicles can lose up to twenty-five percent of their value; (2) the formula improperly double counts a vehicle's mileage because it is used to calculate pre-loss value and again as part of the mileage modifier; and (3) the formula incorrectly assumes that vehicles over a certain mileage (100,000 or 150,000, depending on the vehicle) have no retail sale value.   Then Hixenbaugh offers the dispositive opinion designed to carry Plaintiffs' burden regarding commonality and predominance: he opines that State Farm's use of the 17(c) formula to assess diminished value results in under-assessment *100%* of the time.   Pls.' Mot. to Certify Class Ex. 11, Hixenbaugh Rep. ¶ 80, ECF No. 26-11. Thus, it follows that in every case where State Farm used this formula, State Farm breached the contract by paying the policyholder less than the policy required.   It is this bold assessment that the formula underestimates diminished value *every* time that must be subjected to closer scrutiny.

If this were simply a Federal Rule of Evidence 702 issue, the Court would be required to perform its *Daubert* gatekeeping function to determine whether the jury should even hear this opinion testimony.   But in the Rule 23 analysis, the Court acts as the factfinder in deciding whether class certification requirements are met.   Therefore, while the analysis may be similar (whether the opinion is sufficiently reliable to be considered by the factfinder), it is distinctly different

(whether the opinion is found persuasive by the factfinder). There is no opportunity to allow the opinion through the *Daubert* gate, punting to a jury for a jury to decide the weight it deserves. Here, the gatekeeper is also the factfinder. Thus, the Court must assess Hixenbaugh's opinions for persuasiveness, assuming it finds them admissible under Rule 702.

For purposes of this Order, the Court assumes that Hixenbaugh's opinions are admissible. But as explained in the remainder of this Order, the Court, as the factfinder, concludes that his opinion that the 17(c) formula underestimates diminution in *every* case cannot withstand rigorous scrutiny. And without that essential element, Plaintiffs cannot carry their burden on commonality and predominance.

To reach his opinion, Hixenbaugh compared diminished value assessments that State Farm calculated using the 17(c) formula to an appraiser's diminished value appraisals and found that the 17(c) assessments were low 100% of the time and did not reasonably approximate the insureds' losses. His sample consists of fifty-one cases where a State Farm insured hired Hixenbaugh to calculate diminished value after receiving a State Farm 17(c) assessment, plus twenty-four cases where a State Farm insured hired another appraiser to calculate diminished value after receiving a diminished value assessment. In each of these

14

seventy-five cases, the full, individualized appraisal calculated by an appraiser exceeded the 17(c) assessment.[3]

State Farm contends that Hixenbaugh's testimony does not demonstrate that the 17(c) formula is wrong all the time or that all putative class members were injured by application of the formula to their claims. Michael Salve, State Farm's economist expert, conducted statistical tests on the results in Hixenbaugh's initial expert report, which disclosed a sample size of twenty claims. Based on these tests, Salve concluded that Hixenbaugh's sample of vehicles was not representative of the proposed class. To do his tests, Salve received data regarding the entire proposed class, which includes 636,406 claims. Def.'s Mot. to Exclude Hixenbaugh Ex. H, Salve Expert Rep. ¶ 26, ECF No. 27-8. Plaintiffs did not file a motion to exclude Salve's testimony, but they do contend in a footnote of their motion to certify and in their response to State Farm's motion to exclude Hixenbaugh's testimony that Salve's opinions should be disregarded.

Plaintiffs argue that the proposed class data Salve considered was overinclusive because it included claims going

---

[3] Hixenbaugh attached to his expert reports appraisal reports for the fifty-one appraisals he conducted. The reports disclose the loss date, repair value, mileage, model year, pre-loss value, 17(c) assessment, vehicle make, and damage severity. Hixenbaugh did not attach the appraisal reports by the other appraisers, and the only information his rebuttal report contains is the insured's name, the full appraisal, and the 17(c) assessment.

back to December 7, 2012 (six years before Plaintiffs filed
their breach of contract action in the Superior Court of
Muscogee County) even though Plaintiffs now seek to certify a
class where the loss occurred on or after December 7, 2017 (one
year before the complaint date due to the policy's contractual
statute of limitations).  Plaintiffs contend that these older
claims can be filtered out, but they did not submit filtered
data or evidence establishing how the removal of the older
claims would impact Salve's statistical calculations.  More
importantly, Hixenbaugh's own initial sample—which Salve
compared to the proposed class data—includes claims with loss
dates before December 7, 2017.  And after Salve criticized
Hixenbaugh's sample for being too small, Hixenbaugh submitted a
rebuttal report with more claims.  Of the fifty-one claims
Hixenbaugh analyzed for this case, more than sixty percent have
a loss date prior to December 7, 2017.  The Court thus finds
that Salve's inclusion of older claims does not warrant
disregarding Salve's analysis.

Plaintiffs also fault Salve's work because the data he
received from State Farm mistakenly included claims with two
loss codes other than the eleven loss codes Plaintiffs now use
to define their proposed class.  Plaintiffs assert that these
claims can be filtered out, but they did not submit filtered
data or evidence establishing how the removal of the claims with

16

the two objectionable loss codes impacts Salve's calculations. Plaintiffs also did not state what the average repair value, average mileage, or share of claims involving luxury vehicles would be if these two loss codes were filtered out.  Given the absence of evidence that the inclusion of two extra loss codes materially affected Salve's calculations in a statistically significant way, the Court will not exclude Salve's opinions.

Salve compared the average repair value for a claim in Hixenbaugh's sample ($11,866) to the average repair value from the proposed class data ($4,442), and he determined that the two averages are "statistically significantly different."  *Id.* ¶¶ 28-30.[4]  Salve also compared the average vehicle mileage for a claim in Hixenbaugh's sample (55,059) to the average mileage from the proposed claims data (97,468) and determined that the two averages are "statistically significantly different."  *Id.* ¶¶ 31-32.[5]  Lower mileage vehicles (under 40,000 miles) made up fifty percent of Hixenbaugh's original sample.[6]  *Id.* ¶ 33.  In contrast, lower mileage vehicles (under 40,000 miles) accounted for fewer than twenty-five percent of the vehicles in the

---

[4] Hixenbaugh submitted a rebuttal expert report with thirty-one more claims, but Plaintiffs did not point to any evidence that these additional claims render the gap between averages not statistically different.  Based on the Court's review, the average repair value for all fifty-one claims Hixenbaugh analyzed is more than $11,000.

[5] Based on the Court's review, the average mileage of the fifty-one vehicles Hixenbaugh analyzed is less than 45,000 miles.

[6] Based on the Court's review, lower mileage vehicles (under 40,000 miles) made up more than fifty-five percent of the fifty-one vehicles Hixenbaugh analyzed.

proposed claims data. *Id.* And while Hixenbaugh's sample includes four vehicles with mileage over 100,000 miles, it does not include any with mileage over 200,000 miles. Vehicles with more than 200,000 miles make up 12.1% of the proposed class data. *Id.* Salve opines that the distribution of vehicle mileage in Hixenbaugh's sample is "statistically significantly different" from the distribution of vehicle mileage in the proposed class data. *Id.* ¶ 35.

In addition to comparing the repair value and mileage, Salve compared the average model year of the proposed class data, 2008, to the average model year in Hixenbaugh's sample, 2015.[7] According to Salve, the average model year for Hixenbaugh's sampled vehicles is statistically significantly higher than the average model year in the proposed class data. *Id.* Hixenbaugh's original sample did not include any vehicles with a model year prior to 2011, and his rebuttal report sample includes seven vehicles (13.7%) with a pre-2011 model year. *Id.* ¶ 36. In contrast, fifty-eight percent of the proposed class data is comprised of claims with vehicle model years before 2011. *Id.* Salve also analyzed the type of vehicles and concluded that Hixenbaugh's sample "has much larger shares of luxury-brand Acura, Audi, Lexus, Mercedes-Benz, and Porsche

---

[7] Based on the Court's review, the average model year of the fifty-one vehicles Hixenbaugh analyzed was 2014.

vehicles" than the proposed class data and a much smaller proportion of Toyotas and other brands. *Id.* ¶ 38.

Salve's overall conclusion is that Hixenbaugh's sample is "deficient," and Hixenbaugh's analysis of the small number of claims "cannot be relied upon for purposes of extrapolating to the claims associated with the alleged class as a whole." *Id.* ¶ 15. According to Salve, "the vehicles associated with Hixenbaugh's sample of claims have, on average, higher repair costs, lower mileage, later model years, and are over-representative of luxury vehicle makes than the claims associated with proposed class." *Id.* ¶ 17. Salve opines that this "bias towards newer, and likely more expensive, vehicles (and consequently, higher repair costs) results in Mr. Hixenbaugh examining a sample of claims that is biased and not representative of the vehicles associated with claims of the proposed class." *Id.* Plaintiffs did not present any evidence to suggest that the addition of thirty-one (or fifty-five) more claims in the rebuttal report would change this analysis.

Neither side directly addressed whether Hixenbaugh's sample was representative of the proposed class data in terms of damage severity. The Court reviewed Hixenbaugh's assessment of the damage severity for each of the fifty-one claims in his reports. According to Hixenbaugh's valuations, the damage severity rating is based on the type and extent of the damage. In Hixenbaugh's

sample of fifty-one vehicles, only two (fewer than five percent) had "minor" damage. Both were Porsches, and the average repair value for those vehicles was approximately $2,400.00.   Around seventeen percent of the vehicles were "low moderate" damage, with an average repair value of about $6,000.00.   More than fifty percent of the vehicles had "high moderate" damage or worse, with an average repair value of more than $14,000.00. Based on this data and Salve's conclusion that the average repair value from the proposed class data was $4,442.00, the present record suggests that Hixenbaugh's sample focused on more severely damaged vehicles.

Weighing this evidence, the Court is not convinced that Plaintiffs have established that every member of the proposed class was injured by State Farm's application of the 17(c) formula.  Hixenbaugh did conclude that State Farm under-assessed diminished value compared to his individualized appraisals in all fifty-one cases he evaluated.  He also concluded that State Farm under-assessed diminished value compared to another appraiser's individualized appraisals in all twenty-four cases they evaluated.  But, as discussed above, Hixenbaugh's small sample of claims differs substantially from the entire universe of proposed claims data.  Since his sample is materially different than the proposed class data, the Court cannot find that Hixenbaugh's testimony establishes that State Farm under-

assesses  diminished  value  100%  of  the  time.    At  most,
Hixenbaugh's  analysis  suggests  that  the  17(c)  formula  does  not
accurately  calculate  diminished  value  for  claims  involving  late
model,  low  mileage  vehicles  with  high  repair  values.

The  Court  recognizes  that  Hixenbaugh  pointed  out  some  flaws
in  the  17(c)  formula  which,  at  first  blush,  might  seem
universally  problematic.    But  Plaintiffs  did  not  point  to
evidence  that  the  flaws  impact  100%  of  the  proposed  class.
Hixenbaugh  opines  that  some  vehicles  can  lose  up  to  twenty-five
percent  of  their  value,  but  Plaintiffs  did  not  point  to  evidence
that  *all*  assessments  are  flawed  because  of  the  ten  percent  cap,
and  they  did  not  point  to  evidence  that  twenty-five  percent  of
pre-loss  value  should  be  the  starting  point  for  calculating
diminished  value  for  100%  of  claims.    Plaintiffs  also  did  not
point  to  evidence  that  the  17(c)'s  mileage  modifier  results  in  a
statistically  significant  reduction  to  a  diminished  value  100%
of  the  time.    And,  Plaintiffs  did  not  point  to  evidence  that
every  high  mileage  vehicle  suffers  diminished  value.    Simply
put,  the  present  record  does  not  show  that  alleged  flaws  in  the
17(c)  formula  injured  all  the  proposed  class  members.

In  summary,  Plaintiffs  have  not  established  that  the  17(c)
formula  is  wrong  for  all  claims  across  the  spectrum  of  vehicle
makes,  model  years,  mileage,  severity  levels,  and  repair  costs.
Thus,  they  have  not  demonstrated  that  every  putative  class

member was injured by application of the 17(c) formula. Uninjured plaintiffs, of course, do not have standing to bring an action. *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1274 (11th Cir. 2019). While it may be possible in some cases to determine with common evidence which class members are injured and thus have standing, Plaintiffs here proposed no subclasses and no way for differentiating between injured and uninjured class members. Rather, they hoped their expert's opinion would carry the day and convince the Court that every insured who received a 17(c) assessment was injured and suffered damages. But it did not.

Furthermore, to establish commonality and predominance, there must be some common way of figuring out which 17(c) assessments breached State Farm's contract and which did not. Since Plaintiffs' expert was admittedly not qualified to create a "new and improved" 17(c) formula, Plaintiffs' suggestion at this point seems to be, "we'll figure it out later." There is currently no evidence that there is a manageable way to ascertain which class members were injured and which ones were not. *Cf. Cherry v. Dometic Corp.*, 986 F.3d 1296, 1303–04 (11th Cir. 2021) ("A difficulty in identifying class members is a difficulty in managing a class action."). Instead, the only recognized method in the present record for proving injury and damages is a comparison of the 17(c) assessment to a highly individualized vehicle appraisal. An action cannot proceed as a

class action if the claims are not based on a common contention
that is capable of class-wide resolution, and it cannot proceed
as a class action if individualized issues predominate over
common ones.  For these reasons, the Court finds that Plaintiffs
have not met their burden of proving commonality or
predominance.  Plaintiffs' motion for class certification is
denied.

                                CONCLUSION

     When one steps back for a moment to catch a glimpse of that
often elusive big picture, he notices the stunning nature of
what Plaintiffs' counsel asks be done here.  Plaintiffs in
effect maintain that the only way State Farm could not breach
its contracts with its insureds who presented property damages
claims was for it to subject itself to contempt by refusing to
use the judge-approved *Mabry* formula.  Plaintiffs' counsel
suggests that Defendant should face this predicament of the
ultimate Hobson's choice, even though its policyholders who do
not like the diminution in value figure under the *Mabry* formula
had the opportunity to present evidence to contest it when they
presented their individual claims.  And in this case, these
individual Plaintiffs will have the opportunity to present
evidence to a jury as to the true diminution in value to their
individual vehicles.  They will not be constrained by *Mabry* or
by any other formula that may be considered arbitrary.  It will

                                    23

be for the jury to decide whether their "repaired" vehicle is less valuable because it was previously in a wreck, and if so, the amount of that diminution.   Such determinations are particularly well suited for jury resolution and not class action administration.[8]

As discussed above, the Court denies Plaintiffs' motion for class certification (ECF No. 26).[9]  Given the Court's ruling on class certification, the only claims remaining in this action are the individual claims of the named Plaintiffs.   The dispositive motion deadline has passed for those claims, and no dispositive motion was filed.   The Court intends to try those claims during its March 2022 trial term.   The Court will issue a notice of pretrial conference in late December 2021 or early January 2022.

IT IS SO ORDERED, this 2nd day of September, 2021.

S/Clay D. Land
_____
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

_____

[8] The Court hastens to add that the foregoing gratuitous observations are pure dicta in that they did not affect the Court's Rule 23 analysis.   As to any suggestion that a class action is the only feasible way for these property damage claims to be pursued, the Court observes that the dollar amounts of the individual claims cannot supersede the Rule 23 requirements.   Moreover, small claims courts exist in this state for a reason, and Georgia law does provide for the recovery of litigation expenses, including attorney's fees, in the appropriate case.   So these putative class members are certainly not without a remedy.
[9] Because the Court assumed for purposes of today's order that Hixenbaugh's opinions were admissible, State Farm's motion to exclude Richard Hixenbaugh (ECF No. 27) shall be terminated.